NOT FOR PUBLICATION                                    (Docket Nos. 2, 9)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____     :
                                :
ELVIS GOODEN, SR.,              :
                                :
          Plaintiff,            :    Civil No. 05-2472 (RBK)
                                :
     v.                         :    **OPINION**
                                :
TOWNSHIP OF MONROE, et al.,     :
                                :
          Defendants.           :
_____     :

**KUGLER**, United States District Judge:

This matter comes before the Court on motions by Defendants Township of Monroe, et al. ("Defendants"), to dismiss the claims of Plaintiff Elvis Gooden, Sr. ("Gooden"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56, and motion by Gooden to supplement his brief in opposition. For the reasons set forth below, the motions will be denied.

**I.   Background**[1]

Mayor Mary Duffy appointed Gooden to the position of chief financial officer and director of finance for the Township of Monroe ("Township") in August 2001. Michael F. Gabbianelli

---

[1] Because the Court must accept all well-pleaded allegations as true for the purposes of the motion to dismiss, the following background is taken from Gooden's allegations and is not intended to constitute findings of fact.

("Gabbianelli") reappointed Gooden after assuming the office of Township Mayor in January 2003. During Gooden's employment with the Township, Richard Gledhill ("Gledhill"), an elected member of the Township Council, allegedly directed a number of racist comments towards Gooden during meetings and in other official contexts. Gooden reported these statements to the Township Solicitor on July 5, 2004, prompting an investigation by the Gloucester County Prosecutor's office.

Gooden claims that after he reported Gledhill's statements, various Township employees retaliated against him by refusing to provide the assistance necessary to compile the Township's annual financial statement. After Gooden failed to complete the statement on time, the Township brought disciplinary charges and scheduled a hearing seeking Gooden's removal from his position. During the course of these proceedings, Gabbianelli sent Gooden a letter informing him that the Township was discontinuing his salary and benefits. Gooden also claims that Defendants solicited replacements for his position before the termination hearings had concluded.

Gooden filed a Complaint in this Court on May 11, 2005, alleging deprivation of due process and retaliation in violation of the New Jersey Law Against Discrimination (NJLAD), the First Amendment, and Article I, Paragraph 6, of the New Jersey Constitution. Defendants now move to dismiss for failure to state

a claim or, in the alternative, for summary judgment.

**II.  Motion for Summary Judgment**

Defendants have moved for summary judgment in the alternative of their motion to dismiss. However, where a party opposing a motion for summary judgment provides an affidavit establishing that the party cannot "present by affidavit facts essential to justify the party's opposition," Rule 56(f) authorizes the Court to "refuse the application for judgment" or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). This Rule provides for the just adjudication of disputes by ensuring that parties are not "'railroaded' by a premature motion for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (D.C. Cir. 1986) (noting summary judgment not premature because parties had conducted discovery and the action had been ongoing for a year prior to petitioner's motion).

The affidavit should specify "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Pastore v. Bell Telephone Co., 24 F.3d 508, 511 (3d Cir. 1994) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988)). Where the plaintiffs establish that the evidence to support their theory is "in the hands of defendants . . . summary judgment should not be granted without affording plaintiffs an opportunity

3

for discovery on the issue of concerted action." Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir. 1977) (quoting Costlow v. United States, 552 F.2d 560, at 564 (3d Cir. 1977)); Ward v. United States, 471 F.2d 667, 670-71 (3d Cir. 1973) ("[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.").

Defendants filed the present motion, in lieu of an answer, on June 16, 2005, just over a month after Gooden instituted the underlying action. In opposition to Defendants' motion, Gooden's counsel, Mark Cimino, Esquire ("Cimino"), provided a Rule 56(f) affidavit, attesting that discovery had not commenced and that Gooden therefore did not possess the evidence necessary to oppose. Cimino asserts that Gooden lacked access to considerable evidence in Defendants' possession, including information related to Gooden's official civil service title, relevant to establish a due process claim. The affidavit notes further that Gooden lacked any documentation save that provided by Defendants for the purposes of advancing their motion and that obtained through an Open Public Records Act request to the County Prosecutor's Office.

Although not as detailed as preferred in this Circuit, Plaintiff's affidavit is sufficient for Rule 56(f) purposes, particularly when taken in conjunction with the opposition brief,

4

which further identifies the unavailable evidence. See St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994) (holding failure to provide Rule 56(f) affidavit not automatically fatal to Rule 56(f) consideration if opposition provides necessary details). Accordingly, because Plaintiff has not had an opportunity to obtain important relevant evidence through discovery channels, Defendants' motion for summary judgment is premature and will be denied without prejudice.

**III. Rule 12(b)(6) Standard**

A motion to dismiss under Rule 12(b)(6) should be granted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In re Rockefeller Ctr. Properties, Inc., Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Klein v. General Nutrition Co., 186 F.3d 338, 342 (3d Cir. 1999). A motion to dismiss "tests the legal sufficiency of the complaint." In re ATI Tech., Inc., Sec. Litig., 216 F. Supp. 2d 418, 427 (E.D. Pa. 2002) (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)). "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller, 311 F.3d at 215.

Consequently, the Court must "accept all well-pleaded allegations in the complaint as true and [] draw all reasonable

inferences in favor of the non-moving party." Id. at 215 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). However, the court need not credit "bald assertions" or "legal conclusions draped in the guise of factual allegations." Id.

**IV.  Analysis**

**A.  Due Process**

Defendants argue that Gooden lacked any property interest in his employment warranting due process protection and that, even assuming a protectable property interest, Gooden received all the process to which he was entitled.

**1. Protected Property Interest**

A public employee has a constitutionally cognizable property interest in his employment only where he can demonstrate a "legitimate claim of entitlement" to the position, typically established by state statute. Latessa v. New Jersey Racing Com'n, 113 F.3d 1313, 1318 (3d Cir. 1997) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972)). Statutes providing for dismissal only for "just" or "good" cause, for example, clearly bring the employment under the auspices of due process. Perri v. Aytch, 724 F.2d 362, 366 (3d Cir. 1983); McKeever v. Township of Washington, 236 F. Supp. 2d 400, 404 (D.N.J. 2002). In some instances, an expectation of employment may also arise from "'mutually explicit understandings' between a

6

government employer and employee." Latessa, 113 F.3d at 1318 (quoting Stana v. School Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985)).

Gooden claims that the language of three separate statues entitles him to due process protection: (1) the Faulkner Act (N.J.S.A. 40:69A-1); (2) the Civil Service Act (N.J.S.A. 11A:2-13); and (3) the statute establishing the position of municipal chief financial officer (N.J.S.A. 40A:9-140.9). Because the Court now finds that N.J.S.A. 40:69A-43(b) and (c) afforded Gooden a protectable property interest in his former position, the Court will not reach Gooden's additional arguments.

Under N.J.S.A. 40:69A-43(c), "[t]he mayor may in his discretion remove any department head and . . . any other municipal executive officer who is not a subordinate departmental officer or employee, after notice and an opportunity to be heard." Before the removal becomes effective, the mayor must file written notice of the intent to remove with the council, and a two-thirds vote of the council disapproving the employee's termination could effectively prevent the removal. N.J.S.A. 40:69A-43(c). Defendants argue that because the mayor may remove the employees "in his discretion," the employment is effectively "at-will" and unprotected. However, this disregards the explicit provisions for notice, an opportunity to be heard, and a procedure by which the mayor's discretion could be overcome.

7

In McKeever v. Township of Washington, 236 F. Supp. 2d 400, 404, 409 (D.N.J. 2002), the district court held that an employer's failure to provide a statutorily mandated hearing prior to the termination of employment violated the Fourteenth Amendment, depriving the employee of procedural due process even assuming good cause for the termination. Unlike the situation presently before the court, the statute in McKeever required "good cause" for dismissal,[2] as well as a hearing; nevertheless, the McKeever court emphasized that it was the deprivation of the requisite hearing that constituted the due process violation. In other words, bypassing statutory procedures, such as the hearing requirement in N.J.S.A. 40:69A-43(c), to terminate a public employee constitutes an actionable deprivation of due process.

Moreover, N.J.S.A. 40:69A-43(b) creates an expectation of a term of continued employment, providing that "[e]ach department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor." Consequently, where "a mayor seeks to remove his own appointee [this subsection] requires him to afford the individual prior notice and a hearing." Mele v. Fahy, 579 F.

---

[2] The statute at issue in McKeever, N.J.S.A. § 40A:9-154.6, provides: "A person holding office, position or employment as full-time municipal superintendent of public works . . . shall not be removed therefrom for political or other reasons except for good cause, upon written charges filed with the municipal clerk and after a public, fair and impartial hearing."

Supp. 1576, 1580 (D.N.J. 1984); <u>see also</u> <u>McKeever</u>, 236 F. Supp. 2d at 407 (discussing <u>Mele</u>). If, as Gooden claims, Gabbianelli reappointed him when he assumed the mayoral office in January 2003, Gooden would have had a legitimate expectation of continued employment until the conclusion of Gabbianelli's term. Defendants do not address N.J.S.A. 40:69A-43(b) and offer no legal argument in contravention of this conclusion.

**2.   Due Process**

Defendants further contend that even if Gooden had a cognizable property interest in his job, Defendants provided all the process to which he was entitled. In particular, Defendants note that Gooden received a pre-termination notice, hearing, and opportunity to respond, and they argue this was sufficient process under the circumstances.[3] However, Gooden alleges that Defendants prematurely advertised for his position and discontinued his salary and benefits, effectively terminating him prior to the hearing's conclusion. He also claims that the hearing was predetermined, depriving him of any meaningful opportunity to present his side of the facts.

Because "'the root requirement' of the Due Process Clause"

---

[3] Defendants also assert that to the extent Gooden did not receive a complete hearing, it followed from his own failure to appear at the proceedings and therefore was not a deprivation of due process. However, Gooden's alleged failure to appear is a question of fact more appropriately addressed in a motion for summary judgment.

is the opportunity for a hearing *before* the deprivation of property, a public employee with an property interest in his employment is clearly entitled to "'some kind of a hearing' prior to the discharge." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971); Roth, 408 U.S. at 569-570). Consequently, Gooden's allegations that Defendants terminated his salary and benefits prior to the outcome of the hearing states a claim for a deprivation of property without due process.

Moreover, where the "pre-termination hearing has been predetermined regardless of the proof presented, the concerns and goals of the pre-termination hearing . . . have not been met" since there is "no meaningful opportunity to invoke the decision maker's discretion, and [therefore] no possibility that a mistaken decision can be avoided." Wagner v. City of Memphis, 971 F. Supp. 308, 318-19 (W.D. Tenn. 1997); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985) (noting that predetermined hearing cannot be said to truly constitute a "pretermination opportunity to respond"). Consequently, if, as Gooden alleges, the hearing's outcome was preordained, Gooden did not receive the process to which he was entitled.

**B.   First Amendment**

Defendants argue that Plaintiff's First Amendment claims should be dismissed for vagueness and for failure to allege

10

engagement in a protected activity.

## 1.    Adequacy of Allegations

The Federal Rules provide for notice pleading, meaning that the Complaint need not "set out in detail the facts upon which a claim is based, but merely provide a statement sufficient to put the opposing party on notice of the claim." Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) (citing Remick v. Manfredy, 238 F.3d 248, 264 (3d Cir. 2001); Foulk v. Donjon Marine Co., 144 F.3d 252 (3d Cir. 1998)). The purpose of the pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Weston v. Pennsylvania, 251 F.3d 420, 428-9 (3d Cir. 2001) (citing Universe Tankships, Inc. v. United States, 528 F.2d 73, 75 (3d Cir. 1975). Thus, as is well established, the Complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although brief, the First Count of the Complaint clearly alleges that Defendants retaliated against Gooden for reporting racist statements by a member of Township Council. (Pl.'s Compl. at 3-4, ¶ 7, 18.) Gooden establishes his First Amendment claim in the Second Count of the Complaint, by "repeating and incorporating the above counts." (Pl.'s Comp. at 5, ¶ 1.) Although it could certainly do so more clearly, the Complaint does put Defendants on notice of Gooden's First Amendment

11

retaliation claim, and is adequately detailed to enable Defendants to respond. Because Gooden's allegations set forth his First Amendment claim and the grounds upon which the claim rests, Gooden has satisfied the notice pleading requirements.

**2.   Protected Activity**

Defendants request dismissal of Gooden's Complaint for failure to allege engagement in an activity protected under the First Amendment. However, reporting racist comments made in an official context by a member of Township Council is a constitutionally protected activity.

A public employee is entitled to constitutional protection for expressive conduct when (1) the conduct addresses "a matter of public concern" and (2) the value of the expression outweighs "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997) (quoting Connick v. Myers, 461 U.S. 138, 150 (1983)). Consequently, speech "upon matters of only personal interest" is "typically not of public concern, and therefore not protected." Swineford v. Snyder County, 15 F.3d 1258, 1271 (3d Cir. 1994).

The "right to protest racial discrimination," on the other hand, constitutes "a matter inherently of public concern." Connick v. Myers, 461 U.S. 138, 148 (1983) (citing Givhan v. Western Line Consol. School Dist., 439 U.S. 410 (1979)).

Moreover, "speech disclosing public officials' misfeasance" is also protected, since such information is "relevant in evaluating the performance of a public office or official." Azzaro, 110 F.3d at 978 (quoting Swineford v. Snyder County, 15 F.3d 1258, 1271 (3d Cir. 1994)). These two precepts lead to the conclusion that "discrimination, when practiced by those exercising authority in the name of a public official," is inherently a matter of public concern, particularly because it "would be relevant to the electorate's evaluation of the performance of the office of an elected official." Azzaro, 110 F.3d at 978 (holding that plaintiff's report of sexual harassment by county commissioner was matter of public concern that constituted protected conduct).[4] Accordingly, Gooden's complaint of repeated racist statements by an elected member of the Township Council during meetings and in other official contexts was protected expression, because of the public interest in eradicating racism and in the disclosure of misconduct by publicly elected officials.

**C.   Claim against Township**

Because 42 U.S.C. § 1983 does not create a cause of action

---

[4] The Azzaro Court also noted that "we do not suggest that all public employee complaints about sexual harassment are matters of public concern," 110 F.3d at 980, however, the Court declined to elaborate as to what circumstances might mandate a different outcome. Here, information regarding repeated racist statements by a public official is not significantly distinguishable from the reports of sexual harassment in Azzaro, and is, therefore, a matter of public concern.

for respondeat superior liability, a municipality is not liable for a constitutional tort unless the injury stems from a municipal policy or custom. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1295 (3d Cir. 1997) (quoting <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")). Where a Complaint contains no allegation of a municipal policy or custom, or the allegation is merely conclusory and vague, claims against the municipality are properly dismissed. <u>Berthesi v. Pennsylvania Bd. of Probation</u>, 246 F. Supp. 2d 434, 439 (E.D. Pa. 2003).

The Supreme Court has held that a single act by a municipality's "properly constituted legislative body" may constitute policy, regardless of whether that body "had taken similar action in the past or intended to do so in the future." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). As an example of such an act, the Court cited to <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980), which treated as policy a city council resolution firing the plaintiff without a pretermination hearing. <u>See also</u> <u>Bartholomew v. Fischl</u>, 782 F.2d 1148, 1153 (3d Cir. 1986) ("Bartholomew's complaint alleges that he, like Owen, was terminated from employment . . . at the direction of the

14

city's lawmakers or those whose acts may fairly be said to represent official policy."). Further, where the legislative body has delegated personnel decisions to a public officer, that officer's decision to discharge an employee constitutes "official city policy." McKinley v. City of Eloy, 705 F.2d 1110, 1116 (9th Cir. 1983) (holding city liable for City Manager's decision to fire plaintiff).

Defendant argues that Gooden's allegations against the Township must be dismissed for failure to allege a municipal policy that caused his injury. However, while the Complaint does not explicitly make reference to an official Township "policy or custom," Gooden clearly states a claim that he was terminated from his municipal employment as chief financial officer and director of finance for the Township. Because the official termination of a Township employee is implicitly a municipal policy, Gooden has adequately stated a claim against the Township.

The accompanying Order shall issue today.


Dated: 3/7/06                S/Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge