NOT FOR PUBLICATION                          (Docket Nos. 44, 45, 47)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                          :
ELVIS GOODEN, SR.,                        :
                                          :
                 Plaintiff,               :      Civil No. 05-2472 (RBK)
                                          :
         v.                               :      **OPINION**
                                          :
TOWNSHIP OF MONROE, et al.,               :
                                          :
                 Defendants.              :
_____   :

**KUGLER**, United States District Judge:

      This matter comes before the Court on motions by Defendants the Township of Monroe,

Mayor Michael Gabbianelli, and the Council of the Township of Monroe ("Township

Defendants") for partial summary judgment and Defendants Richard Gledhill and the Estate of

Richard Gledhill ("Defendant Gledhill") for summary judgment on the claims of Plaintiff Elvis

Gooden, Sr. ("Gooden"), pursuant to Federal Rule of Civil Procedure 56, and cross-motion by

Gooden for summary judgment against all Defendants. For the reasons below, the Defendants'

motions will be granted in part and denied in part and Gooden's motion will be denied.

**I.     BACKGROUND**

      In the prior opinion in this case, the Court recited the facts as alleged in Gooden's

Complaint. See 2006 WL 561916. Discovery is now completed, and the Court recites the facts

as established by the record in the light most favorable to Gooden.

Mayor Mary Duffy appointed Gooden to the position of chief financial officer ("CFO") and director of finance for the Township of Monroe ("Township") in August 2001.  His appointment was for a four-year term, beginning retroactively on January 1, 2001.  He was also appointed Director of Finance and Supervisor of Accounts.  In 2003, Michael F. Gabbianelli assumed the office of Township Mayor.  Mayor Gabbianelli reappointed Gooden Director of Finance in 2003.  (Gabbianelli Dep. July 30, 2007, 20:14-25.)  Though Gooden's terms as CFO expired in January 2005, he was not reappointed nor was he terminated through resolution by the Council.  He continued working as CFO after that time.  He also worked as Supervisor of Accounts, a civil service position, though there were some questions about whether he had been effectively appointed to the position.  (O'Hearn Cert. Ex. L.; Ex. P.)

During Gooden's employment with the Township, Richard Gledhill ("Gledhill"), an elected member of the Township Council, allegedly directed a number of racist comments towards Gooden during meetings and in other official contexts.  Gledhill, on more than one occasion, asked Gooden to show proof that Gooden was a United States citizen.  (Pl.'s Ex. A at 2.)  Gledhill referred to Gooden as "the token black employee" or "the minority" who was employed because a quota had to be filled.  (Id. at 2, 4.)

Gooden reported these statements to the Township Solicitor in July, 2004, though he asserts he discussed them with the Mayor and other town officials prior to that occasion as well.  (Gooden Dep. June 7, 2007, 170:12-174:11.)  A meeting was held between Gooden, the Mayor, the Solicitor, and Gledhill on July 13, 2004.  Gooden memorialized the statements in a memorandum to the solicitor on July 15, 2004.  (Pl.'s Ex. A.)  An investigation was conducted by the Gloucester County Prosecutor's office.  (Pl.'s Ex. B.)  The matter was remanded to

municipal court because the evidence was insufficient to support an indictment.  (Alvarado Dep. July 26, 2007, 35:10-25.)

Gooden claims that after he reported Gledhill's statements, various Township employees retaliated against him.  This culminated in the termination of his employment as a Township employee.  Gooden received a Preliminary Notice of Disciplinary Action on March 3, 2005, charging him with "incompetency; inefficiency or failure to perform duties; insubordination; inability to perform duties; neglect of duty; other sufficient cause."  (O'Hearn Cert. Ex. B.)  A letter from the Mayor explained that Gooden was being removed for failure to perform the duties of Chief Financial Officer, including "failure to properly maintain a general ledger, failure to prepare bank reconciliations in a timely and proper manner, failure to properly maintain a cash receipts journal; failure to properly maintain a case disbursement journal, failure to properly maintain a general journal, and such other acts and omissions which have impeded the Township's ability to effectively determine and manage its assets, liabilities, revenues, expenditures and fund balances and ability to prepare annual financial statements and budgets." (O'Hearn Cert. Ex. C.)  The letter further indicated that Gooden could request a hearing, and his benefits and pay would be continued pending any hearing.

Gooden asserts that the Township's allegations were pretextual.  He claims that after he complained about Gledhill's conduct, Township employees refused to provide him the assistance necessary to perform his job, including compiling the Township's annual financial statement.  He further asserts that Township employees refused to speak with him or provide him with support and staffing.  This led to Gooden's failure to complete the annual financial statement on time and the initiation of termination proceedings.

Gooden requested a hearing, which began on March 22, 2005.  (O'Hearn Cert. Ex. D, F.)
The hearing lasted several days and was adjourned several times.  Testimony about Gledhill's
conduct does not appear to have been presented at the hearing.  On April 27, 2005 (the fourth day
of the hearing), during the testimony of an expert called by Gooden, a question was raised about
whether Gooden was a tenured employee.  After heated discussion, the hearing was stayed while
the parties sought a determination from the Division of Local Government Services on the tenure
issue.  (O'Hearn Cert. Ex. I at 171-200.)  The hearing was scheduled to resume on May 11, 2005.

Before the hearing could resume, the Mayor sent Gooden a letter informing him that the
Township was discontinuing his salary and benefits as of May 1, 2005 but would be still
proceeding with the continuation of the hearing.  (Pl.'s Ex. F.)  Gooden also learned that the
Township sought replacements for his position through an advertisement sent to a municipal job
listing website on May 3, 2005.  (Pl.'s Ex. E.)  After learning this information about the
discontinuation of his pay and the advertisement for his replacement, Gooden filed the Complaint
in this case.  He also sent a letter to the hearing examiner indicating that he would not be
presenting further evidence at the hearing and requesting the recommended decision be
forwarded to him.  (O'Hearn Cert. Ex. V.)  On May 11, 2005, the hearing concluded with no
further testimony.  The hearing examiner issued a decision on May 16, 2005 recommending
affirmance of the Township's decision to remove Gooden.  (O'Hearn Cert. Ex. N.)

Gooden's Complaint alleges violations of state and federal law and seeks redress from the
Township Defendants and the Estate of Richard Gledhill (which was added as a party after
Gledhill passed away on March 19, 2006).  In Count 1, Gooden alleges that the Township
Defendants and Defendant Gledhill violated the New Jersey Law Against Discrimination,

N.J.S.A. § 10:5-12 ("LAD")  by harassing him and by terminating him in retaliation for reporting

the discrimination.  He alleges violations of his rights under the First Amendment to the United

States Constitution and his rights under Article 1, Paragraph 6 of the New Jersey Constitution, as

well as violations of the Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 ("CEPA"),

in Count 2.  In Count 3, he alleges that all Defendants deprived him of procedural due process as

granted by the United States and New Jersey Constitutions when his employment was

terminated.  The Township Defendants now move for summary judgment on all claims except

the LAD claim and Defendant Gledhill moves for summary judgment on all counts.  Gooden

cross-moves for summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the

evidence presented by the parties, the Court "must view the facts in the light most favorable to

the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d

641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

### A.   Due Process

#### i.  Property Interest

A public employee has a constitutionally cognizable property interest in his employment only where he can demonstrate a "legitimate claim of entitlement" to the position, typically established by state statute.  Latessa v. New Jersey Racing Com'n, 113 F.3d 1313, 1318 (3d Cir. 1997) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972)).  Statutes providing for dismissal only for "just" or "good" cause, for example, clearly bring the employment under the auspices of due process.  Perri v. Aytch, 724 F.2d 362, 366 (3d Cir. 1983); McKeever v. Twp. of Washington, 236 F. Supp. 2d 400, 404 (D.N.J. 2002).  In some instances, an expectation of employment may also arise from "'mutually explicit understandings' between a government employer and employee."  Latessa, 113 F.3d at 1318 (quoting Stana v. School Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985)).

Gooden held three positions:  CFO, Director of Finance, and Supervisor of Accounts.

6

Each must be considered individually, as Gooden does not have the same property interest in each of these positions.

The Supervisor of Accounts position was a civil service position controlled by the requirements of the Civil Service Act (N.J.S.A. § 11A:2-13). However, the Merit System Board has already determined that Gooden was never properly appointed to this position. (O'Hearn Cert. Ex. P.) That determination is not challenged here, and Gooden concedes that the issue of civil service protection pursuant to N.J.S.A. 11A:1-1 is moot. (Pl.'s Opp'n at 11.) Therefore, Gooden did not have a legitimate claim of entitlement to the Supervisor of Accounts position, and Defendants will be granted summary judgment on the due process claims related to termination of this particular position.

Gooden's claims as to the CFO position also fail. In the prior Opinion, the Court noted that "[i]f, as Gooden claims, Gabbianelli reappointed him when he assumed the mayoral office in January 2003, Gooden would have had a legitimate expectation of continued employment until the conclusion of Gabbianelli's term." 2006 WL 561916 at *4. The record before the Court now shows that Mayor Gabbianelli did not reappoint Gooden to the position of CFO in 2005. (Gooden Dep. June 7, 2007 215:17-24.) In 2005, Gooden would have been eligible to acquire tenure; however, it is undisputed that Gooden did not seek tenure. (Gooden Dep. June 7, 2007 217:11-24.) After his term expired in January 2005, Gooden was "merely a holdover in office, and so subject to displacement at any time" by an action of the Mayor. De Muro v. Janeczek, 65 A.2d 141, 141 (N.J. Super. Ct. Law Div. 1949); see Galfo v. Rochelle Park Twp., 398 A.2d 1355, 1358 (N.J. Super. Ct. Law Div. 1979). Gooden could have sought tenure but did not. He did not have a legitimate claim of entitlement to the position of CFO after the expiration of this

appointment where neither he nor the Mayor did anything to secure his continued employment in the position.  Defendants will be granted summary judgment on the due process claims related to the CFO position as well.

Gooden does have a legitimate claim of entitlement to the Director of Finance position. Mayor Gabbianelli reappointed him to this position in 2003, and therefore Gooden is protected by N.J.S.A. 40:69A-43(c), which provides the statutory process a mayor must utilize to remove his own appointed department head, including a Director of Finance.  (Gabbianelli Dep. July 30, 2007, 20:14-25.)  Gooden did have a property interest in this position and was entitled to due process before his employment as Director of Finance could be terminated.

### ii.     Required Process

First, the Court notes that Gooden's Complaint does not allege any actions by Defendant Gledhill contributing to violations of due process, and Gooden has provided no evidence of Defendant Gledhill's participation in any potential due process violations.  The Estate of Defendant Gledhill will be granted summary judgment on Gooden's due process claims.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207  (3d Cir. 1988) (requiring allegations of personal involvement in constitutional claims brought under 42 U.S.C. § 1983).

The Township Defendants argue that they provided to Gooden all the process to which he was entitled.  In particular, Defendants note that Gooden received a pre-termination notice, hearing, and opportunity to respond, and they argue this was sufficient process under the circumstances.  The Township Defendants also assert that to the extent Gooden did not receive a complete hearing, it followed from his own failure to appear at the proceedings and therefore was not a deprivation of due process.

Gooden agrees that the Towbship Defendants did begin to provide him the appropriate process, but argues that the deprivation of due process occurred at the point in the hearing when the Mayor prematurely advertised for his position and discontinued his salary and benefits, effectively terminating him prior to the hearing's conclusion.  (Pl.'s Br. at 19-20.)  He also claims that these actions by the Township Defendants meant the hearing was predetermined, rendering the hearing examiner's conclusions meaningless because Defendants had already decided to terminate and replace Gooden.

The evidence shows that on April 27, 2005, the fourth day of the hearing, a question was raised about Gooden's employee status and whether he was protected as a tenured employee. After a lengthy discussion between Gooden's counsel, counsel for the Township, and the hearing examiner, the hearing was stayed while the parties sought a determination from the Division of Local Government Services on the tenure issue.  (O'Hearn Cert. Ex. I at 171-200.)  The hearing was scheduled to resume on May 11, 2005.  On May 2, the Mayor sent Gooden a letter advising that "effective May 1, 2005, your pay and benefits with the Township of Monroe will cease." (Pl.'s Ex. F.)  On May 4, 2005, the Monroe Township Human Resources Office placed an ad on the website of the New Jersey League of Municipalities.  This ad was to run from May 4, 2005 until May 25, 2005.  The advertisement sought a Chief Financial Officer/Director of Finance. The language of the advertisement does not indicate that an interim or temporary employee was sought.  (Pl.'s Ex. E.)

Defendant argues that it employed an interim CFO without replacing Gooden and therefore did not improperly terminate Gooden in the middle of the hearing.  There is evidence showing that interim assistance was needed to fulfill the CFO responsibilities for the Township

9

during the month of March 2005, which the Township obtained from Edmunds and Associates. (O'Hearn Cert. Ex. S.)   There is also evidence that a new CFO was hired on a permanent basis on September 5, 2005.  (Statement of Facts, ¶ 71.)  Defendants' evidence regarding when Gooden was replaced stands in contrast to Gooden's evidence regarding the May 4, 2005 job posting.

N.J.S.A. § 40:69A-43 requires that a mayor may remove a department head only after "notice and an opportunity to be heard."  The statute does not provide for post-termination proceedings; rather, a pre-termination opportunity to be heard is required.  It is undisputed that the Township Defendants gave Gooden notice and an opportunity to be heard at the start of the termination proceedings.  However, the Mayor's action in stopping Gooden's pay and posting for his position effectuated an immediate termination without due process.  Even if Gooden had appeared at the next scheduled hearing day to protest these actions, he would have only been participating in post-termination proceedings.

Moreover, a reasonable juror could conclude that the Mayor's actions meant that he had already determined what the outcome of the hearing would be.  Pursuant to N.J.A.C. § 4A:2-2.6, the Mayor designated a hearing examiner who would listen to the testimony, form conclusions, and transmit his conclusions to the Mayor.  The removal decision ultimately rests with the Mayor under N.J.S.A. § 40:69A-43(c).  (Pl.'s Ex. I (letter from hearing examiner to Mayor finding a legitimate basis for seeking Gooden's removal); Ex. J (Final Notice of Disciplinary Action signed by Mayor on June 1, 2005).)  Where a "pre-termination hearing has been predetermined regardless of the proof presented, the concerns and goals of the pre-termination hearing . . . have not been met" because there is "no meaningful opportunity to invoke the decision maker's

discretion, and [therefore] no possibility that a mistaken decision can be avoided." Wagner v. City of Memphis, 971 F. Supp. 308, 318-19 (W.D. Tenn. 1997); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985) (noting that predetermined hearing cannot be said to truly constitute a "pretermination opportunity to respond").  The issue is not whether the hearing examiner displayed any bias or animosity towards Gooden but instead is whether the Mayor, as the ultimate decision maker who could choose to accept or reject the hearing examiner's recommendations, had already made up his mind before Gooden had a chance to be heard. Gooden has produced evidence that the Mayor stopped his pay and advertised for his job, which gives rise to a genuine question of material fact regarding whether a replacement was sought for Gooden's job before the conclusion of the hearing.

Because Gooden has provided evidence from which a reasonable juror could conclude that he was terminated before the conclusion of the hearing or that the hearing was predetermined, the Township Defendants will be denied summary judgment on the procedural due process claims in Count 3 with regard to Gooden's position as Director of Finance.  Because issues of material fact remain, Gooden's cross-motion will be denied.

**B.    First Amendment Retaliation**

The Township Defendants seek summary judgment on Gooden's First Amendment retaliation claims, arguing that Gooden cannot show a connection between any protected activity and the alleged retaliatory acts.

In order for a public employee to show retaliation in violation of the First Amendment, the employee must first establish that he engaged in constitutionally protected activity.  The Court then uses a balancing test to determine whether the  employee's interest in the speech

11

outweighs the state's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption.  The employee must then show that the protected activity was a substantial or motivating factor in the allegedly retaliatory action.  The employer can then rebut the claim of retaliation by demonstrating that the allegedly retaliatory action would have been taken absent the protected conduct.  Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006); see also Reilly v. City of Atlantic City, 427 F. Supp. 2d 507, 515 (D.N.J. 2006).

The Court has already concluded that Gooden engaged in constitutionally protected activity when he reported Defendant Gledhill's racist comments.  See 2006 WL 561916 at *5. The Court also concludes that Gooden's interest in reporting Gledhill's comments outweighs the Township's interest in avoiding workplace disruption; the public interest in eradicating racism and disclosing misconduct by publicly elected officials outweighs any disruption in the Township.

The Township Defendants focus on the requirement of causation between the protected conduct and the alleged retaliatory action, and they argue that there is "overwhelming evidence" that Gooden would have been terminated due to his poor job performance.  (Defs.' Br. at 28.) Causation can be established through evidence such as the temporal proximity between the protected activity and the termination, "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."  LeBoon v. Lancaster Jewish Comm'y Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007).  The question for the Court is "whether there is sufficient evidence in the record for a reasonable fact-finder to determine that [Gooden's] termination was caused by [his] complaint" about Defendant

12

Gledhill's conduct.  Id. at 233.

The evidence shows that Gooden began in working for Monroe Township in 2001 and continued after Mayor Gabbianelli took office in 2003.  There is evidence that there were problems with Gooden's job performance as early as 2001.  (Hearing Trans. Mar. 26, 2005, 21:11-27:17.)  Mayor Gabbianelli testified that there were some concerns about whether Gooden should be retained in his administration.  (Gabbiannelli Dep. July 30, 2007, 20:14-25.)  The Mayor also testified that he chose to retain Gooden and appoint him as Director of Finance despite these concerns.  Id.

In July 2004, Gooden reported Defendant Gledhill's conduct.  Gooden testified that in August, the Mayor made several attempts to encourage Gooden to drop his complaints against Defendant Gledhill and to withdraw his request to the prosecutor's office to press charge. (Gooden Dep. July 3, 2007, 388:14-389:23.)  Gooden testified that a few months later, in October 2004, Mayor Gabbianelli stopped communicating with him.  Gooden testified that the two did have contact and even played golf together between July and October, but after October the Mayor would not communicate with him, even if Gooden requested it.  (Gooden Dep. June 7, 2007, 198:15-200:14.)  After the November 2004 special emergency budget meeting, Business Administrator Kevin Heydel also stopped speaking with Gooden.  (Gooden Dep. June 7, 2007, 204:14-205:24.)  Heydel told others that Gooden had "screwed up the budget."  (Gooden Dep. June 7, 2007, 206:5-24.)  Later, the Mayor and Heydel  refused to provide assistance from Petroni and Associates, the accounting firm, to complete the end-of-the-year reports; the problem was not that there were no funds to pay for the assistance, because funds had been budgeted as they had been in the past, but the Mayor and the Council  would not approve the assistance.

(Gooden Dep. July 3, 2007, 302:2-304:22; 308:4-7.)

By Gooden's own testimony, the alleged retaliation did not begin until October 2004 at the earliest, about three months after Gooden's complaints about Gledhill.  Because of this delay between the protected conduct and the Defendants' actions, the temporal proximity alone is insufficient to raise an inference of causation.  LeBoon, 503 F.3d at 233 (citing Clark County School Dist. v. Breeden, 532 U.S.268, 273 (2001).  However, the fact that time elapsed is also not conclusive proof against retaliation.  Marra v. Philadelphia Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007).

Gooden argues that the Township Defendants excused his alleged poor job performance until Gooden complained about Gledhill, at which time they made it impossible for him to do his job and then terminated him.  The Township Defendants argue that Gooden was a consistently poor employee and nothing changed after July 2004.  However, Gooden has produced evidence that he was ignored by Township officials after his complaint and was prevented from acquiring assistance he had always been given before he complained.  Cf. LeBoon, 503 F.3d 233-34 (plaintiff produces no evidence of causation where she cannot point to a change in her already-tense relationship with supervisor after engaging in protected conduct.)  A reasonable juror could view the actions of the Township Defendants in not speaking to Gooden and not providing him with needed assistance as retaliatory animus stemming from his protected conduct.

Gooden's burden at this stage is merely to show the existence of a triable issue of fact. Viewing this evidence in the light most favorable to Gooden, the Court concludes that he has shown an issue of fact regarding causation.  The next steps in the analysis–whether Gooden can show that his reporting of Gledhill's comments was a substantial factor in his termination, and

14

whether the Township can show that it would have terminated Gooden absent his protected

conduct–are questions for a jury.  See Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir.

2001); Watters v. City of Philadephia, 55 F.3d 886, 892 (3d Cir. 1995); Zamboni v. Stamler, 847

F.2d 73, 79 n.6, 80 (3d Cir. 1988).

Because the remaining inquiries in Gooden's First Amendment retaliation claim must be

decided by a jury, the Township Defendant's motion for summary judgment on this count is

denied.  Gooden has provided no evidence that Defendant Gledhill retaliated against him in any

way, and the Estate of Gledhill is granted summary judgment on Gooden's First Amendment

claims.

**C.      Claims against Township**

The Township asks for summary judgment on Gooden's 42 U.S.C. § 1983 claims,

arguing that Gooden has not produced any evidence linking any municipal custom or policy with

alleged constitutional violations.  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978);

Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).  The Court has previously ruled

that the official termination of a Township employee is implicitly a municipal policy.  See 2006

WL 561916 at *6.  Because the Court now concludes that Gooden's claims for violation of due

process regarding his position as Director of Finance and for retaliation under the First

Amendment survive summary judgment, Gooden has adequately linked this municipal policy

with alleged constitutional violations.  The Township is not entitled to judgment as a matter of

law on these claims.

**D.      State Law Claims**

**i.       Harassment Claims Against Defendant Gledhill**

15

The Estate of Defendant Gledhill seeks summary judgment on Gooden's claims under the LAD, arguing that because Gledhill was not Gooden's supervisor and did not give substantial assistance to the unlawful conduct of Gooden's employer, he cannot be held liable for any LAD violations.

The LAD prohibits an employer from discriminating against or creating a hostile work environment based on an employee's race or national origin.  N.J.S.A. § 10:5-12(a). "Supervisors" are not considered employers and will not be held individually liable under § 10:5-12(a).  Hurley v. Atl. City Police Dep't, 174 F.3d 95, 125 (3d Cir. 2000).  Supervisors may be individually liable, however,  if they aid or abet a violation of the LAD.  Failla v. City of Passaic, 146 F.3d 158 (3d Cir. 1998); N.J.S.A. § 10:5-12(e).  Individual non-supervisory employees, even those who commit discriminatory acts, cannot held liable under the employment discrimination provisions of the LAD.  As explained by the Third Circuit in Hurley:

> [A] nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment, because such affirmative acts do not substantially assist the employer in *its* wrong, which is its failure to prevent and redress harassment by individual employees.  Rather, a nonsupervisory employee's harassment takes advantage of the employer's wrongful conduct; it is the employee who seems to be "aided and abetted" by the employer.  A supervisor, by contrast, may be liable as an aider and abettor for active harassment or knowing and willful inaction, because in either case the supervisor violates his or her duty as a supervisor to prevent and halt harassment.

Hurley, 174 F.3d at 129.  The potential awkwardness of holding an individual liable under an aiding and abetting theory is explained by the supervisor's duty to prevent harassment, and the supervisor's potential to violate that duty either through indifference to the harassing acts of another or engaging affirmative harassing action.  Id. at 126.  In evaluating whether a defendant accused of harassment is a supervisor, New Jersey courts look to "such indicia as the power to

16

fire and demote, to influence compensation, and to direct all job functions."  Entrot v. BASF
Corp., 819 A.2d 447, 459 (N.J. Super. Ct. App. Div. 2003) (finding issue for jury on defendant's
supervisory status).

Gooden accuses Defendant Gledhill of exercising supervisory power over Gooden and
thus having liability for his allegedly harassing acts.  Gooden argues that Gledhill controlled
Township Council meetings as the president.  He also cites N.J.S.A. § 40:69A-37(b), which
permits a council such as the Monroe Township council to "[r]emove, by at least two-thirds vote
of the whole number of the council, any municipal officer, other than the mayor or a member of
council, for cause, upon notice and an opportunity to be heard."  (Gooden Dep. 394:7-16.)  He
notes that the council set his compensation, citing N.J.S.A. § 40:69A-43(a).  (Gooden Dep.
394:7-16.)  Defendant Gledhill argues that he was not Gooden's supervisor, noting that all
contact between Gooden and the Council would have been mediated by the Mayor.  Gledhill also
argues that he did not have the authority to evaluate Gooden's job performance or issue
disciplinary actions against Gooden.

Gooden testified that Gledhill was the finance chair for the Council for 2003.  (Gooden
Dep. July 7, 2007, 350:1-5.)  Gledhill would regularly come to Gooden's office and ask
questions related to Gooden's work, despite the direction that Council members go through the
Mayor before speaking with Gooden.  (Gooden Dep. July 7, 2007, 385:1-7.)  Gooden testified
that he did not have any "responsibilities" to Gledhill, but that because as CFO he was appointed
by the council, council members "feel that they could go to the CFO with any questions on any
fiscal or purchasing issues."  (Gooden Dep. July 7, 2007, 385:18-24; 393:25-394:6.)  Gooden
also testified that Gledhill would request that Gooden come speak to him about finance issues,

17

including the Township's budget, and Gooden would do so.  (Gooden Dep. July 7, 2007, 387:18-23.)  Gooden did agree  that Gledhill never gave him a work performance evaluation.  (Gooden Dep. July 7, 2007 19-21.)  There is also evidence that when Gooden confronted Defendant Gledhill with his complaints regarding Gledhill's comments, Gledhill referred to his authority to vote for or against Gooden's pay increases, thus acknowledging his ability to influence personnel actions relating to Gooden.  (O'Hearn Cert. Ex. X.)

The evidence of Gledhill's ability to vote to remove Gooden or alter Gooden's compensation leads towards a finding of supervision.  Gooden has provided enough evidence to permit a jury to consider whether Gledhill exercised supervisory authority such that he can be held individually liable under the LAD.  See Entrot, 819 A.2d at 459-61 (finding jury question where there was conflicting evidence regarding defendant's status).  Because there is evidence of Gledhill's affirmative acts of racial harassment, Gooden has also created an issue of fact regarding whether Defendant Gledhill "knowingly gave substantial assistance or encouragement" to the hostile work environment Gooden claims to have experienced.  See Hargrave v. Cty of Atlantic, 262 F. Supp. 2d 393, 435 (D.N.J. 2003) (denying summary judgment on LAD claims where alleged harasser did not challenge supervisory status and where record contained evidence of affirmative acts of harassment "contribut[ing] toPlaintiff's perception that her work environment had become hostile").  Summary judgment to the Estate of Gledhill on Gooden's LAD claims is denied.

### ii.     Harassment Claims Against the Township Defendants

The Township Defendants do not move for summary judgment on this claim; however, Gooden does seek summary judgment on whether the Township Defendants permitted racial

18

harassment in violation of the LAD.  There are disputed issues of fact on the nature and extent of the allegedly harassment, and these issues of fact must be determined by a jury.

In order to establish harassment on the basis of race in violation of the LAD, a plaintiff must show that "the defendant's 'conduct (1) would not have occurred but for the employee's [race]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [African American] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'"  Taylor v. Metzgar, 706 A.2d 685, 688-89 (N.J. 1998) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993).

In order to succeed on his motion for summary judgment, Gooden is required to prove that the evidence is such that a reasonable juror would have to conclude that Gooden was harassed and a hostile work environment was created because of his race.  As detailed above, Gooden has provided evidence that Defendant Gledhill made racist comments to him or about him on several occasions while Gledhill was a Township council member and Gooden was employed by the Township.  While a rational factfinder could conclude that these comments created a hostile work environment, there is not enough evidence to conclude that a rational factfinder would have to find that a hostile work environment existed.  See Taylor, 706 A.2d at 690-94 (holding that evidence of patently racist slur by superior was sufficient to survive summary judgment because a "rational factfinder, crediting plaintiff's evidence, could conclude that defendant engaged in discriminatory harassment"); cf. Sheperd v. Hunterdon Developmental Ctr., 803 A.2d 611, 625-26 (N.J. 2002) (discussing contours of severe or pervasive requirement).

Moreover, the Township raises an affirmative defense.  An employer may be held liable for the discriminatory actions of its supervisory employees based on its failure to create anti-

19

harassment policies or "[w]hen the employer knows or should know of the harassment and fails to take effective measures to stop it."  Velez v. City of Jersey City, 817 A.2d 409, 415-416 (N.J. Super. Ct. App. Div. 2003) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 461-62 (1993). An employer may escape liability where it has an effective anti-harassment policy which it enforces through prompt remedial action.  Velez, 817 A.2d at 415 ("What is required is an evaluation of the entire remedial process engaged in by the employer, including, for example, the speed, diligence, and good faith with which a[n] . . . investigation is undertaken.").  The Township produces evidence tending to show that it promptly and effectively responded to the harassment when it was reported and so is entitled to a "safe haven" from vicarious liability. (O'Hearn Cert. Ex. X; Gooden Dep. June 7, 2007, 112:15-19; Gabbianelli Dep. July 30, 2007, 59:14-20.)

There are disputed factual issues regarding the severity and pervasiveness of Gledhill's comments and whether the Township responded appropriately to the comments or encouraged Gooden to drop his complaints.  (Gooden Dep. July 3, 2007, 389:20-23.)  A jury must determine if Gledhill's comments created a hostile working environment under the LAD and whether the Township's actions in investigating and responding to the comments were enough to absolve the Township of liability.

### iii.    Retaliation Claims Against All Defendants Under the LAD and CEPA

The LAD prohibits an employer from retaliating against an employee for filing a complaint of discrimination.  N.J.S.A. § 10:5-12)(d).  Similarly, CEPA instructs employers that they may not retaliate against an employee who discloses activities the employee reasonably believes to be in violation of the law.  N.J.S.A. § 34:19-3(a).  Gooden's claims under the LAD

and CEPA are substantially the same as his claim under the First Amendment.  For the reasons

explained above with regard to Gooden's First Amendment retaliation claim, the Township

Defendants' motion for summary judgment on Gooden's LAD retaliation claim will be denied,

and the estate of Defendant Gledhill's motion for summary judgment on Gooden's LAD

retaliation claim will be granted.  Issues of fact remain, and Plaintiff's cross-motion for summary

judgment on these claims is denied.

## IV.    CONCLUSION

As explained above, the Township Defendants will be granted summary judgment on

Gooden's due process claims relating to his employment as the CFO and the Supervisor of

Accounts and will be denied summary judgment on Gooden's due process claim relating to the

Director of Finance position.  The Township Defendants will be denied summary judgment on

Gooden's other claims.  The Estate of Defendant Gledhill will be granted summary judgment on

all claims except the claim of harassment under the LAD, on which summary judgment is denied.

Gooden's cross-motion is denied in its entirety.  An accompanying order will issue today.


Dated:____4-22-08_____          ____/s/ Robert B. Kugler_____
                                       ROBERT B. KUGLER
                                       United States District Judge